IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**COLLETTE Y. WILLIAMS,**

      **Plaintiff,**

**v.**                                                          Case 2:15-cv-02352-JPM-cgc

**NIKE, INC.,**

      **Defendant.**

---

**REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Nike TN, Inc.'s ("Defendant" or "Nike") Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry "D.E." #29). Defendant requests that this Court grant summary judgment on Plaintiff's claims of violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") as well as Plaintiff's purported claim of a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").[1] The instant motion was referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #5). For the reasons set forth herein, it is recommended that Defendant's Motion for Summary Judgment be GRANTED.

---

[1] As discussed, *infra*, Plaintiff's Complaint states that it raises a Title VII claim but contains no allegations of discrimination on the basis of race or any other protected class; however, Plaintiff asserted at her deposition that she sought to raise a claim of race discrimination in violation of Title VII even though she had neither clearly set forth such allegations in her Complaint or exhausted her administrative remedies on such a claim. Accordingly, out of an apparent abundance of caution, Defendant addressed the purported Title VII claim in the instant motion.

1

I. **Proposed Findings of Fact**[2]

Nike is a global marketer and distributor of athletic footwear, apparel, and equipment. (Temple Decl. ¶¶ 3-4). Nike maintains anti-discrimination, harassment, retaliation, and reasonable-accommodation policies, which are outlined in its U.S. Employee Handbook and which are available on the company's intranet. (*Id.*) Specifically, the U.S. Employee Handbook states as follows:

> As an Equal Opportunity Employer, Nike is committed to meeting the spirit as well as the letter of the law. We have been, and continue to be, committed to Equal Opportunity Employment and equal treatment of all qualified individuals—regardless of race, color, sex, national origin, age, religion, marital

---

[2] Defendant complied with Local Rule 56.1(a) and provided a "separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Local Rule 56.1(b) required Plaintiff to respond as follows:

> (b) <u>Non-moving party.</u> Any party opposing the motion for summary judgment must respond to each fact set forth by either:
>
>   (1) agreeing that the fact is undisputed;
>   (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
>   (3) demonstrating that the fact is disputed.
>
> Each disputed fact must be supported by specific citation to the record. Such response shall be filed with any memorandum in response to the motion. The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant.

Local Rule 56.1(b). The response is required to be filed within twenty-eight days after the motion is served or a responsive pleading is due, whichever is later. Local Rule 56.1(b). Further, Local Rule 56.1(d) provides that "[f]ailure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment. Plaintiff filed a brief yet timely Response to the instant motion; however, she did not respond to Defendant's Statement of Undisputed Material Fact. Accordingly, the Court recommends that the facts are not disputed for purposes of summary judgment.

status, sexual orientation, gender identity, gender expression, veteran status, disability, or any other factors that are not job related.

(Pl.'s Dep., Exh. 14 at 16). Further, Nike has a separate policy titled "Employees with Disabilities," which states as follows:

> As part of Nike's commitment to Equal Opportunity Employment and to comply with the Americans with Disabilities Act (ADA), every Nike employee is responsible for ensuring that there is no discrimination against individuals based on disability. . . . When a person with a disability makes his/her disability known, Nike will make every reasonable attempt to provide an accommodation to enable the person to perform the essential functions of the job, unless the accommodation would impose an undue hardship on the business.

(*Id*. at 16-17).

All Nike employees receive a copy of the applicable policies and handbooks, including Williams, who signed a Nike U. S. Employee Handbook Acknowledgement stating that she has "been informed of the location of the Nike U.S. Employee Handbook on the company intranet or ha[s] received a printed copy." (Pl.'s Dep. at 61 & Exh. 13; Temple Decl. ¶ 5). Williams admits that she was aware that Nike had an equal employment opportunity policy as well as a policy prohibiting discrimination against employees with disabilities. (Pl.'s Dep. at 72-73).

Nike maintains two distribution centers located near Memphis, Tennessee─its Shelby facility and its Northridge facility. (Temple Decl. ¶¶ 3-4). Williams began her employment with Nike on or about April 17, 2006 working as a Material Handler at Nike's Shelby facility. (Pl.'s Dep. at 72-73; Temple Decl. ¶ 6). On or about March 1, 2009, Williams transferred on a permanent basis to the Northridge facility, which distributed only Nike's shoe products. (Pl.'s Dep. at 40, 82-83). As a Material Handler, Williams was responsible for assisting with and ensuring the smooth operations of product movement at the distribution center. (*Id*. at 41-42). Williams worked both as a "picker" and as a "packer," which were both classified as Material

Handler functions, and it is required that employees are cross-trained and able to perform both functions. (*Id*. at 43).

As a packer, Williams worked on the floor of the distribution center, standing next to a production line similar to a conveyor belt, pulling shoe boxes off as they came down the line, and packing the shoe boxes into larger boxes; after a larger box was full, Williams taped the box and pushed the box down the conveyor line. (*Id*. at 42-45). As a picker, Williams was provided with a specific order that would tell her where to go in the facility, and she would take the items listed in the order at the specified location and put them into baskets; when the baskets were full, Williams was responsible for pushing the baskets to the next location. (*Id*. at 46-47). Williams remarked that the baskets were more than six feet tall, were very heavy when full, that she would at times "struggle with the basket," and that they were "more than 50 pounds sometimes." (*Id*. at 48-49).

As the job description for the Material Handler position reflects, whether Williams was working as a picker or a packer, she was required to load and unload containers; request product via terminals; request appropriate trailers; operate rolling equipment; and prepare and adjust product by palletizing, stocking, restocking, order picking, and manually sorting. (*Id*. at 40-43 & Exh. 10). Accordingly, Williams was required to routinely perform a wide variety of repetitive physical tasks, including walking, stooping, kneeling, crouching, pushing, pulling, reaching, and lifting fifty pounds or more. (*Id*.)

On October 17, 2006, Williams reported an injury alleging that while working on the line hanging fleece and sweats at the Shelby facility, she developed swelling in her hand and wrist. (Pl.'s Dep. at 104-06 & Exh. 23). Subsequently, on May 27, 2009, Williams reported another injury, stating that, "due to unknown causes," Williams sustained pain in her lower right back,

4

across her hip, and down her legs. (Pl.'s Dep. at 111-12 & Exh. 24). Nike arranged for Williams to take a leave of absence from work for a period of time due to her injury until she was able to return to work on or about July 10, 2010. (*Id*.) Williams entered into a Settlement Agreement relating to this injury, which was approved by the Tennessee Department of Labor on May 7, 2012. (*Id*. at 116 & Exh. 26).

On May 3, 2011, Williams experienced another on-the-job injury when she was walking in the lobby of the Northridge facility. (Pl.'s Dep. at 117-19 & Exh. 27). Williams slipped and fell on a wet spot and landed on her right side, and she alleged that she injured her lower back, right hip, knee, shoulder, and neck as a result of the fall. (*Id*.) Williams entered into a Settlement Agreement regarding this injury, which was approved by the Tennessee Department of Labor on June 26, 2012. (Pl.'s Dep. at Exh. 29).

Immediately following her May 3, 2011 injury, Nike allowed Williams to perform light-duty work for a period of time working in the "cage," in which she was responsible for handing out scanners and other equipment to be used by other Material Handlers and for making larger boxes for the shoe boxes, which required repetitive motion and required her to be able to alternate sitting and standing. (Pl.'s Dep. at 122; Temple Decl. ¶¶ 11-12). The "cage" is not separate from the Material Handler position; rather, anyone working in the cage is required to also perform the functions of the Material Handler position. (Pl.'s Dep. at 238; Temple Decl. ¶ 13).

In September 2011, Williams' doctor determined that she could no longer perform the functions of her position with Nike, and Nike allowed Williams to begin a leave of absence on or about September 23, 2011. (Pl.'s Dep. at 134; Temple Decl. ¶ 14). Approximately one month

later, on November 18, 2011, while Williams remained out of work on leave, Nike's Leave Administration Team sent a letter to Williams informing her that she would exhaust her formal leave entitlement under Nike's policy on December 2, 2011, and notified Williams that, "if you believe you have a disability which may need to be accommodated, pursuant to the Americans with Disabilities Act, please submit the specified forms. . . . ." (Pl.'s Dep. at 159-60 & Exh. 32).

On March 14, 2012, Williams' physician, Dr. Apurva Dalal, filled out a form titled Certification of Health Care Provider for Employee's Serious Health Condition, which was provided to Nike, indicated Williams could not perform many of her job functions, and certified that she would be incapacitated and unable to work through September 2012. (Pl.'s Dep. at 167 & Exh. 34). On or about September 12, 2012, Bobbie Temple, Employee Relations Manager, received an updated report from Dr. Dalal, which stated that Williams could never balance, bend, stoop, kneel, crawl, climb, or lift any objects over twenty pounds; could never carry, push, or pull anything over twenty pounds; and could not use her hands for repetitive, frequent, or occasional actions such as pushing and pulling. (Pl.'s Dep. at 171-73 & Exh. 36; Temple Decl. ¶ 15).

Given the restrictions provided by Dr. Dalal and the nature of her job duties as a Material Handler, Nike determined that Williams could not perform the essential functions of the Material Handler position. (Pl.'s Dep. at 173). In making this determination, Temple examined the positions available at both the Northridge and Shelby facilities, including in the processing and Special Services departments, to determine whether Nike could accommodate Williams' restrictions in any alternative positions. (Temple Decl. ¶¶ 16-17). However, all of these positions require some repetitive lifting, bending, alternative sitting and standing, and repetitive motions with the hands, arms, and wrists. (*Id.* ¶¶ 18-19). Therefore, Nike determined that

Williams was not qualified for any positions. (*Id.*) Rather than terminating her employment, Nike allowed Williams to remain off of work on an extended leave of absence; however, Nike continued to request updates from Williams' physicians as to when she may be able to return to work. (*Id.* ¶¶ 20-21).

On November 28, 2012, Temple sent a letter to Dr. Dalal with a copy of the Material Handler job description that requested that he assess what, if any, reasonable accommodations would enable Williams to perform the essential functions of her position. (Pl.'s Dep. at 179-80 & Exh. 37). Dr. Dalal responded to Temple's letter on December 19, 2012 listing a number of restrictions on Williams' physical activities. (Pl.'s Dep. at 182-85). In response to the question, "[f]rom your review of the attached job description, can the individual perform the functions of the position," Dr. Dalal answered, "No." (*Id.* at 184).

Because Nike had not received any further update from Williams that her permanent restrictions may change, on May 10, 2013, Temple sent a letter to Williams summarizing the history of Williams' restrictions and stating that, "given the restrictions placed on you by your physician, you are not qualified to hold your current position, with or without accommodation." (*Id.* at 186-88 & Exh. 39). Nike further informed her that it was unable to reassign her to another position. (*Id.*) Nike concluded the letter stating that, "if we are unable to identify a different vacant role for you at Nike for which you're qualified, with or without accommodation, by June 1, 2013, you'll be separated from employment since [sic] you cannot perform the essential functions of the job." (*Id.*) Nike also reiterated that Williams would be eligible for future reemployment should an appropriate position for which she was qualified become available. (*Id.*)

On or about May 29, 2013, Dr. Dalal submitted a Fitness for Duty evaluation dated May 16, 2013 stating that Williams had the following permanent restrictions: she could only lift, carry, push or pull up to 40 pounds; she could never squat, climb, or crawl; she could only lift, bend, carry, push, or pull for 1-2 hours at a time; and, she could not perform repetitive motions with her wrist, arms, or hands. (Pl.'s Dep. at 190-91 & Exh. 40; Temple Decl. ¶ 22). Nike analyzed Williams' permanent restrictions against the job duties of the Material Handler position and determined that it could not accommodate Williams' restrictions because the Material Handler position (including working in the "cage") required repetitive movements with wrists, arms, and hands, bending, lifting, and pushing and pulling of greater than fifty pounds. (Temple Decl. ¶¶ 12, 23-25; Pl.'s Dep. Exhs. 10, 41). Plaintiff admitted that she was not able to return to work as a Material Handler at the point in time when her employment was terminated. (Pl.'s Dep. at 222).

Further, there was no vacant position at either the Northridge or Shelby facility that did not require bending, lifting, sitting and standing, and repetitive motions with hands, arms, and wrists. (*Id.*) Plaintiff also admitted that she was unable to work in any of those other positions at that time due to her restrictions. (Pl.'s Dep. at 222). Therefore, Nike terminated Williams' employment effective June 7, 2013. (Pl.'s Dep. at 193 & Exh. 41).

At the time her employment was terminated, Nike informed Williams that she could continue to apply for vacant positions with Nike that she was able to perform. (*Id.*) Plaintiff never searched for any other position with Nike after her employment ended. (*Id.* at 242). Plaintiff also states that she has not searched for or applied to any other employment opportunities after her position ended with Nike because she states that she cannot "take [her] lifetime injury, with the restrictions [she has], and go to another job." (*Id.* at 227). However,

Plaintiff asserts that she believes that Nike should accommodate her restrictions because she was injured at Nike and that she, at the least, should have been allowed to work in the "cage." (*Id*. at 228-229). Plaintiff admits that she is unaware, though, if any other person is employed by Nike with her same permanent restrictions. (*Id*. at 229).

On or about December 5, 2013, Williams filed a Discrimination Complaint ("EEOC Charge") with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") in which she indicated that she had suffered discrimination on the basis of disability and color. (Pl.'s Dep. at Exh. 49). In the statements attached to her EEOC Charge, Williams referenced facts relating only to her medical condition and purported disability discrimination claim. (*Id*.) She did not reference any facts relating to color discrimination, race discrimination, or any other protected characteristic. (*Id*.) On February 26, 2015, the EEOC issued a Dismissal and Notice of Rights as to Williams' EEOC Charge. (Pl.'s Dep. at Exh. 50).

Williams applied for and received payments for long-term disability benefits from March 21, 2012 until March 20, 2014. (*Id*. at 168). After her long-term disability payments ended, Williams applied for Social Security disability benefits through the Social Security Administration. (*Id*. at 196-98 & Exh. 43). She was granted benefits and began to receive them in February 2014 "due to a physical impairment." (*Id*.) As part of her application for Social Security disability benefits, Williams represented that she "became unable to work because of [her] disabling condition on September 20, 2011"─the same day that her leave of absence with Nike began. (Pl.'s Dep. at 200 & Exh. 43). At her deposition, she admitted that she certified several times in her Social Security filings that she has been unable to work since September 2011. (*Id*. at 238). Williams further represented that she is "still disabled." (*Id*.)

Additionally, though not contained in her Complaint or her EEOC Charge, Williams alleged at her deposition that Nike discriminated against her on the basis of her race (African-American). (Pl.'s Dep. at 240). In support of this claim, Williams alleges that, on one occasion, she visited the Shelby facility and observed a woman named Mary Durham, who is Caucasian, "sitting down at the table doing envelopes," which she also describes as re-boxing envelopes, but that Nike would not allow Williams to perform the same work. (*Id*. at 224-26, 240-41; Temple Decl. ¶ 26). Williams states that she witnessed Durham doing this work at a time when she was told her restrictions could not be accommodated. (*Id*. at 225). Williams admits that she did not know what position Durham worked in, what work restrictions Durham had, or how long any of Durham's restrictions were expected to last. (*Id*. at 224-25). Nike states that Durham has temporary restrictions and was assigned light duty work that met the requirements of the restrictions she sustained for a workers' compensation injury for a temporary period of time. (*Id*. ¶¶ 26-29). Nike asserts that it has no long-term or permanent position, however, which allowed an employee to work only sorting envelopes. (*Id*. ¶ 30).

## II.     Proposed Conclusions of Law

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences

based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

      *i.*     *Title VII*

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

national origin." *Blackburn v. Shelby Cty.*, 770 F. Supp. 2d 896, 918 (citing 42 U.S.C. § 2000e-2(a)(1)). To pursue a Title VII claim in federal court, a plaintiff must first pursue administrative relief. *See Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991); *Dinmalik v. Henry Ford Macomb Hosp. Corp.*, Civ. No. 07-13907, 2009 WL 190039, at *3 (E.D. Mich. Jan. 27, 2009) ("[T]he Sixth Circuit has held that if the plaintiff did not first present a claim to the EEOC, that claim may not be brought before a federal court."). A plaintiff's judicial claim must be "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Davis v. Sodexho*, *Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (quoting *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir. 1980)). "For a charge to grow out of an ensuing investigation, the plaintiff's EEOC charge must, at a minimum, relate *facts* that would prompt the EEOC to consider or investigate other forms of discrimination." *Young v. Daimlerchrysler Corp.*, 52 F. App'x 637, 640 (6th Cir. 2002) (emphasis in original).

Williams does not include any factual basis for a Title VII claim of race discrimination in her Complaint. Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although courts may hold *pro se* complaints to less stringent pleading standards, the Sixth Circuit has made clear that *pro se* litigants are not exempt from adhering to the Federal Rules. *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (concluding that "a court cannot create a claim which a plaintiff has not spelled out in his pleading") (internal quotation and citations omitted); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (noting that neither the Supreme Court nor other courts "have been willing to abrogate basic pleading essentials in *pro se* suits."). Although Williams checked a box on her Complaint that she sought

to raise a Title VII claim, she does not allege that Nike discriminated against her on the basis of race or on the basis of any other protected class. Instead, her Complaint focuses solely upon her disabilities and physical restrictions. Thus, even under the most lenient pleading standards, it is recommended that Williams' Complaint fails to state a claim for discrimination on the basis of race. *See also Tate v. United Techs.*, No. 15-2602-SHL-dkv, 2015 WL 6440842, at *3 (W.D.Tenn. Sept. 25, 2015) (dismissing Title VII claim where plaintiff checked the Title VII box on a court-supplied form but did not claim to be a member of a protected class under Title VII and alleged discrimination solely on the basis of disability).

Further, not only did Williams fail to include any factual basis for a Title VII claim of race discrimination in her Complaint, Williams also had not previously pursued a claim of race discrimination with the EEOC. Although Williams did check a box stating that she sought to raise a claim of discrimination on the basis of color, "under Title VII, the terms 'race' and 'color' are not synonymous." *Atkins v. Denso Mfg. Tenn.*, No. 3:09-CV-520, 2011 WL 5023392, at *9 (E.D. Tenn. Oct. 20, 2011) (citations omitted). Additionally, the EEOC Charge focuses entirely on her injuries, doctors' visits, and physical restrictions and does not provide any information on allegations of discrimination on the basis of race or color. She concludes by underlying in a list of protected classes under Title VII that Nike discriminated against her on the basis of disability. Accordingly, it is recommended that any purported Title VII race discrimination claim not only fails because it was not properly plead but also must fail because Plaintiff did not exhaust her administrative remedies as required.

### ii.     ADA---Failure to Accommodate

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 425, 429 (2004). At issue in the instant case, Title I prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless a covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A) (2012). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

To establish a prima facie case of failure to accommodate under the ADA, Williams is required to establish that she is otherwise qualified for the position, with or without reasonable accommodation. *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015). Further, "[w]here a plaintiff seeks accommodation, she must establish that a reasonable accommodation is possible." *Clark v. Whirlpool*, 252 F. Supp. 2d 528, 536 (N.D.Ohio 2003) (internal quotations omitted), *aff'd* 109 F. App'x 750 (6th Cir. 2004).

Upon review, there is no genuine issue of material fact that, as of Williams' termination date, she was not qualified to perform the essential functions of her position with or without a reasonable accommodation. Williams admits that she was not qualified to perform either her position or any other position with Nike at the time of her termination. *See Townley v. Blue*

*Cross & Blue Shield of Mich.*, 254 F. Supp. 661, 666-67 (E.D. Mich. 2003) (granting summary judgment when the plaintiff admitted in her deposition testimony that, from the date of her termination onward, she was unable to work). Williams additionally certified to the Social Security Administration that she was and remains unable to work due to physical impairments as of September 20, 2011. *See Hart v. Ridge Tool Co.*, 544 F. Supp. 2d 634, 652 (N.D. Ohio 2008) (finding plaintiff is not a qualified individual with a disability where SSA determined he was eligible for benefits). Williams' physician further determined that she had permanent restrictions that prevented her from performing the essential functions of her position at Nike.

Despite Williams' permanent physical restrictions, she continues to assert that she should have been allowed to work in the "cage" on a permanent basis. However, the record reflects that the "cage" is not a separate position but instead is a function performed by Material Handlers. Nike is not required to create a new position to accommodate an employee's restrictions. *See Baskerville v. Pleasant Lake Villa*, No. 1:14-CV-0025, 2015 WL 4112504, at *5 (N.D. Ohio July 7, 2015). Further, the record reflects that the duties required to work in the "cage" required handing out scanners and other equipment and making larger boxes, which necessarily would require an employee to perform repetitive motions with her wrists, arms, or hands. Williams' physician opined that Williams was permanently restricted from performing such motions.

Further, although employees were assigned temporary light duty work in the "cage," "an employer is not required to reassign a permanently disabled employee to a temporary position for recuperating or a rotating-type position." *Thompson v. E.I. DuPont deNemours & Co.*, 70 F. App'x 332, 337 (6th Cir. 2003); *see also Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*, 509 F. App'x 527, 531 (6th Cir. 2013) ("employers cannot be required to convert either rotating or temporary positions into permanent positions."). Accordingly, it is

recommended that no genuine issue of material fact exists as to Plaintiff's ADA failure-to-accommodate claim.

### iii. ADA---Discriminatory Discharge

Finally, Williams alleges that she was discriminated against on the basis of her disability when Nike terminated her employment. Because Williams does not allege direct evidence of disability discrimination, her claim is governed by the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), as later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). *See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). To establish a prima facie case of disability discrimination, a plaintiff must establish as follows: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). As discussed, *supra*, in Section II.ii, it is recommended that there is no genuine issue of material fact as to whether Plaintiff was qualified for the position of Material Handler, with or without reasonable accommodation, at the time of her termination. Accordingly, it is recommended that no genuine issue of material fact exists as to her ADA discriminatory-discharge claim.

## III. Conclusion

For the foregoing reasons, it is RECOMMENDED that Defendant Nike's Motion for Summary Judgment be GRANTED.

DATED this 3rd day of August, 2016.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE